IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Gladys S. Melton, by Ernie Dutton | ) | Civil Action No.: 4:11-cv-00270-RBH |
| her power of attorney, on behalf of | ) | |
| other persons similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| v. | ) | |
| | ) | |
| Carolina Power & Light Co., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court pursuant to the Motion for Class Certification, Doc. # 69,

filed by Plaintiff  Gladys S. Melton, by Ernie Dutton her power of attorney, on behalf of other

persons similarly situated ("Plaintiff") on October 25, 2011. Defendant Carolina Power & Light

Company d/b/a Progress Energy Carolinas, Inc. ("PEC" or "Defendant") filed a response on

November 23, 2011. On May 18, 2012, this Court held a hearing on the Motion where it heard from

all parties.[1] For the reasons discussed below, Plaintiff's Motion is denied.

## Background

Defendant is a public utility engaged in the business of electricity generation, procurement

and transmission, as well as natural gas procurement, transportation and storage. Defendant

maintains electricity rights-of-way, or easements, allowing it to transmit and distribute electric

power to the public over Plaintiff's property and over the property of similarly situated individuals.

---

[1]  The Court also heard arguments relating to Defendant's Motion to Partial Summary
Judgment, Doc. # 56, and Plaintiff's Motion for Sanctions, Doc. # 78. The Court's order on
Defendant's Summary Judgment Motion is at Doc. # 95. However, as discussed in this
Court's order at Doc. # 96, the Court would like additional information before ruling on
Plaintiff's Motion for Sanctions.

Defendant has easements in South Carolina for two different types of power lines. Transmission lines are high-voltage lines that run from power-generating facilities to substations and from substation to substation. Distribution lines are lower-voltage lines that run from substations to individual customers. It is undisputed that the transmission line easements, which are at issue in this case, allow for the transmission of electricity and for communications in connection thereto, such as communicating between substations as to the amount of electricity to be transmitted. [*See* Mot. for Certification, Doc. # 69-1, at 2–3.]

In the 1980s, Defendant began installing fiber optic cable on some of these easements. To date, Defendant claims it has installed approximately 151 miles of fiber optic cable in both its transmission and distribution line easements in South Carolina. According to Plaintiff, the initial purpose of installing the fiber optic cable in the transmission line easements was to accomplish communications necessary to transmit electricity.

Plaintiff claims that Defendant has allowed telecommunications companies, for a fee, to use the fiber optic cable installed in the transmission line easements for general telecommunications purposes. Plaintiff claims that most of the transmission line easements do not, however, allow for this use, and that this use exceeds the scope of the easements that were granted to Defendant. Plaintiff alleges that Defendant never informed Plaintiff or similarly situated individuals of this general telecommunications use, and that Defendant has not compensated Plaintiff or others for this use. Accordingly, Plaintiff is seeking class certification in order to pursue their claims against Defendant.

The class definition for which Plaintiff seeks class certification is as follows:

All owners of real property in South Carolina over and/or under which PEC has transmission easements or other transmission line rights-of-way or easements used

in connection with transmission of general telecommunications and over and/or in which such easements PEC has constructed or allowed to be constructed fiber optic communication lines and/or wireless communication apparatuses that have been used to transmit communications other than PEC's electricity-related internal communications without the right to do so. Excluded from the class are railroad rights-of-way, rights-of way owned by any federal, state and/or local governmental agency; and any judge who has decided some or all issues in the case and any persons related to the judge in a manner that would disqualify the judge from hearing the case.

[Mot. for Certification, Doc. # 69-1, at 20.]

Plaintiff has produced more than 700 easements that it claims prohibit the use of fiber optic cable for general telecommunications. Plaintiff has categorized the easements into five different easement forms, sorted by the "purpose clause" of the easement, or the key language within the easement grant that defines Defendant's primary rights.

### Standard of Review

"A district court has broad discretion in deciding whether to certify a class." *Thorn v. Jefferson–Pilot Life Ins. Co.*, 445 F.3d 311, 317 (4th Cir. 2006). The party seeking class certification bears the burden of demonstrating that all requirements of class certification are met. *In re A.H. Robins Co.*, 880 F.2d 709, 728 (4th Cir. 1989).

In determining the appropriateness of certification, courts should first consider the definition of the class. *See Anselmo v. West Paces Hotel Gr., LLC*, No. 9:09–2466, 2011 WL 1049195, at *18 (D.S.C. Mar. 18, 2011); *Cuming v. S.C. Lottery Comm'n*, Civil Action No. 3:05–3608, 2008 WL 906705, at *1 (D.S.C. Mar. 31, 2008). "Although not specifically mentioned in the rule, an essential prerequisite of an action under Rule 23 is that there must be a 'class.'" *Anselmo,* 2011 WL 1049195, at *18 (citing 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1760 (1986 & Supp. 2007)). "The proposed class definition must not depend on

subjective criteria or the merits of the case or require an extensive factual inquiry to determine who is a class member." *Cuming*, 2008 WL 906705, at *1 (citing *In re Copper Antitrust Litig.*, 196 F.R.D. 348, 353 (W.D. Wis. 2000)).

Once an adequate class definition is set forth, the moving party bears the burden of proving that the purported class meets the requirements of Federal Rule of Civil Procedure 23. Rule 23 establishes a two part-test for class action certification: the action must satisfy the four subparts of Rule 23(a), as well as the additional requirements of either Rule 23(b)(1), 23(b)(2), or 23(b)(3). *See* Fed. R. Civ. P. 23(b). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011). To meet this burden, a party must do more than articulate a hypothetical application of the rule. Instead, a party must produce enough evidence to demonstrate that class certification is, in fact, warranted. *Id.* "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of [Rule 23] have been satisfied.' " *Id.* (internal citations omitted); *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

## I.      Rule 23(a) requirements

A moving party must establish each of the four prerequisites set forth in Rule 23(a): 1) numerosity of the members of the class such that joinder of all members is impracticable; 2) questions of law and fact that are common to the class; 3) the claims or defenses of the class representatives are typical of the claims or defenses of the class members; and 4) adequacy of representation. Fed. R. Civ. P. 23(a).

### A.      Numerosity

To satisfy the numerosity requirement of Rule 23(a), plaintiff must show that joinder is

impracticable. *Lienhart v. Dryvit Sys., Inc*., 255 F.3d 138, 147 (4th Cir. 2001). No specific number is needed to satisfy this requirement. *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984). The "practicability of joinder depends on many factors, including, for example, the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion." *Kilgo v. Bowman Transp., Inc*., 789 F.2d 859, 878 (11th Cir. 1986); *see also Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir.1980); *Christman v. Am. Cyanamid Co.*, 92 F.R.D. 441, 451 (D.W.Va.1981).

B.     Commonality

Commonality requires that there are questions of law or fact common to the class. *Thorn*, 445 F.3d at 319. "A common question is one that can be resolved for each class member in a single hearing, such as the question of whether an employer engaged in a pattern and practice of unlawful discrimination against a class of its employees." *Id.* In other words, "[the class] claims must depend upon a common contention of such a nature that it is capable of class[-]wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S.Ct. at 2551. "What matters to class certification [ ] is not the raising of common questions . . . but, rather the capacity of a class[-]wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (internal citation and quotation marks omitted).

C.     Typicality

"Typicality requires that the claims of the named class representatives be typical of those of the class; 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.' " *Lienhart*, 255 F.3d at 146. "A plaintiffs claim cannot be so

different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Deiter*, 436 F.3d at 466–67. Typicality does not require the plaintiff's claims to be perfectly identical to the claims of class members; however, "when the variation in claims strikes at the heart of the respective causes of action," the Fourth Circuit has readily denied class certification. *Id.* at 467. "[T]he appropriate analysis of typicality must involve a comparison of the plaintiffs' claims or defenses with those of the absent class members." *Id.*

D.      Adequacy of representation

Plaintiffs must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy of representation requirement involves two inquiries: 1) whether the plaintiff has any interest antagonistic to the rest of the class; and 2) whether plaintiff's counsel is qualified, experienced and generally able to conduct the proposed litigation. *S.C. Nat'l Bank v. Stone*, 139 F.R.D. 325, 330 (D.S.C. 1991). "The adequacy of plaintiffs' counsel . . . is presumed in the absence of specific proof to the contrary." *S.C. Nat'l Bank*, 139 F.R.D. at 330–31.

The Fourth Circuit has stated that "the final three requirements of Rule 23(a) 'tend to merge,' with commonality and typicality 'serv[ing] as guideposts for determining . . . whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.' " *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 337 (4th Cir.1998) (citing *Facon*, 457 U.S. at 157 n.13).

## II.      **Rule 23(b)(3) requirements**

In addition to meeting the numerosity, commonality, typicality, and adequacy of

representation requirements of Rule 23(a), before a class can be certified, the putative class action must fall into one of the categories specified in Rule 23(b). Plaintiff here specifically seeks certification under only Rule 23(b)(3). Unlike class actions under Rule 23(b)(1) and (b)(2), actions under Rule 23(b)(3) are "[f]ramed for situations in which class-action treatment is not clearly called for," but "may nevertheless be convenient and desirable." *Lienhart*, 255 F.3d at 147 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)). Certification under Rule 23(b)(3) is appropriate "when settling the parties' differences in a single proceeding serves their interests by achieving 'economies of time, effort, and expense' and promoting uniformity of decisions as to similarly situated class members without sacrificing fairness." *Mitchell–Tracey*, 237 F.R.D. at 559 (quoting *Amchem Prods., Inc.*, 521 U.S. at 615).

Under Rule 23(b)(3), a proposed class must satisfy two factors: predominance and superiority. *See Thorn*, 445 F.3d at 319.

The predominance requirement ensures that a class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623-24. The predominance requirement "is far more demanding than Rule 23(a)'s commonality requirement." *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004) (internal quotation marks omitted). Whereas commonality requires little more than the presence of common questions of law and fact, Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

The superiority requirement ensures that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Among the factors a district court should consider in deciding whether a class action meets these two

requirements are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C) the desirability or undesirability of concentrating the litigations of the claims in the particular forum; and

> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

## Discussion

Plaintiff has failed to show that she has met all requirements of class certification. Specifically, Plaintiff's proposed class definition depends upon the merits of the case and requires an extensive factual inquiry to determine class members, individual issues predominate over questions of law or fact common to the members of the class, and a class action is not the superior method for adjudication of the controversy.

## I.     Plaintiff's proposed class definition is impermissible

As a threshold matter, Defendant challenges Plaintiff's proposed class definition as creating an impermissible "fail safe" class.[2] A fail safe class definition is one in which the putative class is

---

[2]     The Manual for Complex Litigation (Fourth) counsels against federal judges certifying fail safe classes. "The order defining the class should avoid . . . terms that depend on resolution of the merits (e.g., persons who were discriminated against)." Manual for Complex Litigation (Fourth) § 21.222 (2004). Although it appears that the Fourth Circuit has not squarely addressed the permissibility of a "fail safe" class, several decisions from this Court and other district courts within the Fourth Circuit have held that a "proposed class definition must not depend on . . . the merits of the case . . . to determine who is a class member." *Cuming*, 2008 WL 906705, at *1; *see also Soutter v. Equifax Inf. Servs., LLC*, No. 3:10cv107, 2011 WL 1226025, at *5 (E.D. Va. Mar. 30, 2011). Other circuit courts of appeal examining the issue have also held that fail safe classes are improper. *See Messner*, 669 F.3d at 826; *Randleman v. Fidelity Nat. Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011).

defined by reference to the merits of the claim. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 826 (7th Cir. 2012); Manual for Complex Litigation (Fourth) § 21.222 (2004). It requires a court to rule on the merits of the claim at the class certification stage in order to tell who was included in the class. *Id*. "Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Messner*, 669 F.3d at 826.

Plaintiff's proposed class includes those who own property encumbered by Defendant's transmission line easements, where Defendant has installed fiber optic cable which it has then used for general telecommunications purposes "without the right to do so." [Mot. for Certification, Doc. # 69-1, at 20.] Defendant argues that by including the language "without the right to do so," Plaintiff has constructed a class whose members may only be identified and included *after* the Court determines whether or not the potential class member has a valid claim – that is, whether or not Defendant had the right to transmit general telecommunications via the fiber optic cable on a particular easement. [Def.'s Resp., Doc. # 84, at 12–13.]

Plaintiff contends that to the extent its original class definition is defective,[3] it could amend the class definition to cure any possible defects by referencing the various categories of easements it has identified as prohibiting the transmission of general telecommunications. Plaintiff suggests

---

[3]    While Plaintiff references a number of transmission line class action cases, only a South Carolina state court case used a definition with similar language that would require the court to make a determination on the merits before the class could proceed. [*See* Pl.'s Reply, Doc. #88, at 3–4 (citing *Gressette v. SCE&G*, No. 2004-CP-10-2006, 2009 WL 6707442 (S.C. Ct. Com. Pl. 2009)).] However, from the record here, it does not appear that the *Gressette* court squarely addressed the issue of whether the class definition was appropriate. Further, it is well established that South Carolina's Rule 23 "endorses a more expansive view of class action availability than its federal counterpart." *See Grazia v. S.C. State Plastering, LLC*, 390 S.C. 562, 576, 703 S.E.2d 197, 204 (2010) (citing *Littlefield v. S.C. Forestry Comm'n*, 337 S.C. 348, 354–55, 523 S.E.2d 781, 784 (1999)).

eliminating the phrase "without the right to do so" and creating a class definition covering those who own property encumbered by Defendant's transmission line easements, where Defendant has installed fiber optic cable which it has then used for general telecommunications purposes, "and whose easements are of the type included [in Plaintiff's list of the various categories of defective easements] and determined by the Court not to allow the transmission of general telecommunications." [Pl.'s Reply, Doc. # 88, at 4–5.]

Both of Plaintiff's proposed definitions appear to have the effect of creating fail safe classes. While the second definition offered by Plaintiff eliminates the phrase "without the right to do so," it adds the qualifier "as determined by the Court not to allow . . . general telecommunications." Under either definition, it seems the Court must first determine whether the easement language at issue allowed Defendant to transmit general telecommunications via the fiber optic cable installed on that easement.[4] It appears, then, that the "proposed class definition [depends upon] the merits of the case" as it seems no class members may be ascertained until after this Court makes a decision on the validity of Defendant's easements. *See Cuming*, 2008 WL 906705, at *1.

Although either definition offered by Plaintiff appears to create a fail safe class, or to create a class definition dependent upon the merits of the case, the Court is also mindful that "[d]efining a class so as to avoid, on one hand, being over-inclusive and, on the other hand, the fail-safe problem is more of an art than a science." *Messner*, 669 F.3d at 825. It is better in these circumstances, when practical and possible, to refine the class definition before flatly denying class certification on that basis. *See id.*; *see also Lewis v. First Am. Title Ins. Co.*, 265 F.R.D. 536, 551 (D. Idaho 2010) (revising class definition to correct fail safe problem). However, as discussed herein, the proposed

---

[4]    As discussed in Section I(A)(2), the various language of the different easements could raise predominance issues.

class also fails because individual issues predominate over common issues, and a class action is not the superior method for adjudication. It is thus impractical and unnecessary to undertake an effort to revise the potentially impermissible class definition.[5]

## II.     Plaintiff fails to satisfy the predominance and superiority requirements of Rule 23(b)(3)

Typically, courts examining class certification under Rule 23 begin by examining the four subparts of Rule 23(a) before analyzing the requirements of Rule 23(b).[6] However, Defendant conceded numerosity at the hearing, conflated discussion of the final three requirements of Rule 23(a) in a brief argument focused on commonality, and both parties centered the vast majority their class certification arguments on whether Plaintiff met the requirements of Rule 23(b)(3). [*See* Def.'s Resp., Doc. # 84, at 1–40.] Further, Rule 23(b)(3)'s "far more demanding" predominance requirement incorporates the commonality requirement of Rule 23(a), and courts should exercise "special caution" in deciding class actions certified under Rule 23(b)(3). *See Skipper v. Giant Food*

---

[5]     Even if this Court were to undertake an effort to revise the class definition to correct a possible fail safe problem, the class definition also fails because it is not administratively feasible for the Court to determine whether a particular individual is a member.  [Def.'s Resp., Doc. # 84, at 20.] The proposed class definition would require an "extensive factual inquiry to determine who is a class member." *Cuming*, 2008 WL 906705, at * 1. In Section II, the Court addresses these issues in the context of examining the manageability of this class action. Here, Plaintiff has failed to identify any other class members, and the process of identifying class members would be cumbersome, expensive, and fraught with managerial problems. Further, determining class members is particularly critical in Rule 23(b)(3) actions because class members must receive notice and an opportunity to opt out before the merits of the case are adjudicated. *See Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175–176 (1974); *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1078 (11th Cir. 2000); Manual For Complex Litig. (Fourth) § 21.222; 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1788 (1986 & Supp. 2007).

[6]     Several courts have considered the factors under Rule 23(b)(3) before moving on to the requirements of Rule 23(a), particularly when consideration of Rule 23(b)(3) would be dispositive. *See, e.g., Wu v. Pearson Educ., Inc*., 277 F.R.D. 255, 264 (S.D.N.Y. 2011)*; Kenny v. Supercuts, Inc*., 252 F.R.D. 641, 644 (N.D. Cal. 2008); *Graveley v. City of Phila.*, No. CIV.A. 90–3620, 1997 WL 698171, at *2 (E.D. Pa. Nov. 7, 1997).

*Inc.*, 68 F. App'x 393, 397–398 (4th Cir. 2003); *Lienhart*, 255 F.3d at 146 n.4; 7A Charles Alan

Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1777 (1986 & Supp.

2007). Therefore, the Court will assume that Rule 23(a) is satisfied[7] and turn to evaluate the parties'

arguments against the more exacting demands of Rule 23(b)(3).

A.    Plaintiff cannot satisfy the predominance requirement

There are a number of individual issues that predominate over any common questions that

may exist as to the class, and Plaintiff thus fails to show that predominance under Rule 23(b)(3) is

---

[7]    Given that Rule 23(b)(3) is dispositive in this case it is unnecessary for this Court to decide whether Plaintiff has met the requirements of Rule 23(a). However this Court has doubts as to whether Rule 23(a) is satisfied in this case. As to adequacy and typicality, the single named Plaintiff possesses only one of five different types of easements as categorized by Plaintiff. Yet these groups of easements vary in terms of their purpose language. [*See* Easement Forms, Doc. # 88-3, at 2–19; Mot. For Certification, Doc. # 69-1, at 13–14.] By Plaintiff's own admission, some contain language allowing Defendant to do "all things necessary or convenient" for the transmission of electricity, including "transmitting communications . . . for use in conducting the Company's business," some include the phrase "but not limited to" before listing the ways in which Defendant may use the easements, while others "clearly" prohibit general telecommunications use. [Pl.'s Reply, Doc. # 88-3, at 2; Mot. for Certification, Doc. # 69-1, at 14.] Although this Court is not in a posture to issue a ruling on the merits and determine what conduct is permitted under the easements at issue, the variant granting language in the easement makes it possible that one or more groups of easements may prohibit the conduct complained of by Plaintiff, while other groups might allow it. Given that Plaintiff possesses an easement that might actually allow the conduct at issue, this variation seems to "strike[] at the heart of the respective causes of action[,]" *Deiter*, 436 F.3d at 467, and give the named Plaintiff an interest potentially atypical to the rest of the class. *Stone*, 139 F.R.D. at 330 (D.S.C. 1991). Plaintiff would have trouble proving typicality, and possibly even adequacy, under Rules 23(a)(3) and (4).

As to commonality under Rule 23(a)(2), evaluating Plaintiff's claim would require this Court to analyze several different easements that may or may not allow the challenged conduct, and, as discussed herein, would require the Court to resort to individualized evidence of notice, waiver, consent, and laches. These individualized determinations could make it unlikely that any supposed common question is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551; *see also Lienhart*, 255 F.3d at 146 (holding that the common issues "must be dispositive").

present in this case.

1. Notice-based affirmative defenses

Defendant argues that it notified many putative class members that it was using its fiber optic cable for general telecommunications, a use which began sometime in the 1990s. [*See* Def.'s Resp., Doc. # 84, at 3.] Defendant points to several communications and publications that it claims constituted such notice:

- According to retired PEC vice president Emerson Gower, from 1990 through the mid-2000s, representatives from Defendant gave numerous speeches with a focus on "highlight[ing] non-electric business ventures of [Defendant]. . . [and] includ[ing] a discussion of [Defendant's] telecommunications business – specifically, that [Defendant] was using excess capacity in its existing fiber optic cable system to provide telecommunications services to municipalities, small businesses, and other telecommunications companies." [Gower Aff., Doc. # 84-2, at ¶ 8.] During this time period, Mr. Gower himself made 24 speeches a year to civic groups across the state, including local chambers of commerce, while other employees gave approximately 40–50 similar speeches per year. [*Id.* at ¶ 7.] Attendance at these speeches ranged from 50 to 200 people. [*Id.*]

- In annual reports from 1994–2006, Defendant advised its shareholders that the company was installing fiber optic cable and planned to partner with telecommunications providers to use that cable. [*See* PEC Shareholder Reports, Doc. # 84-1, at 18–51.] For example, one report in 1994 advised shareholders that "the company expanded its internal fiber-optic cable system to accommodate the growing needs of telecommunications providers." [*Id.* at 20.]

- Defendant disclosed its plans for installation and use of fiber optic cable at different times in the 1990s and 2000s through various regulatory filings. [*See* PEC Regulatory Filings, Doc. # 84-1, at 55–106.]

- Defendant published press releases that contained various information regarding Defendant's growth and Defendant's expansive use of fiber optic cable. [*See* PEC Press Releases, Doc. # 84-1, at 107–121.] One such release, states that "[t]he combined fiber optic assets of [Defendant and others] will create a powerful super-regional telecommunications and Internet infrastructure company . . . stretching along the east coast . . . ." [*Id.* at 108.]

- Defendant contends that the class would also include its former employees, who might have first-hand knowledge that Defendant's fiber optic communication lines were used

for general telecommunications purposes. [*See* Def.'s Resp., Doc. # 84, at 12.]

- Defendant also argues that potential class members may have spoken with others who had received notice, or observed work crews and discovered the intended use of the fiber optic communication lines. [*Id*. at 28.]

In turn, Defendant argues that to the extent the easements at issue bar general telecommunications, whether or not a particular class member had notice could entitle Defendant to any number of affirmative defenses, including statute of limitations, waiver, estoppel, laches, or prescriptive easement.

The Court agrees. The presence of notice-based affirmative defenses would require individualized analyses of when potential class members knew or should have known that Defendant was using fiber optic cables for general telecommunications. This individualized analysis is fatal to Plaintiff's claim for class certification.

On its surface, Plaintiff's action appears to raise a common question: Does the easement language allows Defendant to use the easement for general telecommunications purposes? [*See* Mot. For Certification, Doc. # 69-1, at 6–7.] However, "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate *common answers*[8] apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Dukes*, 131 S.Ct. at 2251 (emphasis added) (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)). Here, the presence of numerous potential

---

[8]   This Court is aware that the *Dukes* court discussed the "common answer" analysis in terms of Rule 23(a) commonality and not Rule 23(b)(3) predominance. *Dukes*, 131 S. Ct. at 2250–52. However, the *Dukes* court's reasoning is even stronger when applied to the "far more demanding" predominance requirement of Rule 23(b)(3). *See Lienhart*, 255 F.3d at 146 n.4.

affirmative defenses makes it difficult, if not "impossible[,] to say that examination of all the class members' claims for relief will produce a common answer," and it is even more specious to say that any supposed common answer would predominate over individual issues. *See Dukes*, 131 S.Ct. at 2252.

Plaintiff's arguments to the contrary are unavailing.

### i. Affirmative defenses and denial of class certification

Plaintiff argues that affirmative defenses do not normally justify denial of class certification. [Pl.'s Reply, Doc. # 88, at 6. (citing 2 Herbert B. Newberg, *Newberg on Class Actions* § 4:26, at 241 (4th ed. 2002)).] However, the authority cited by Plaintiff for this proposition does not address prescriptive easements, waiver, estoppel, or laches, and actually notes many times when statute of limitations defenses have, in fact, destroyed predominance. *See* 2 Herbert B. Newberg, *Newberg on Class Actions* § 4:26 (4th ed. 2002). Moreover, in *Gunnells v. Healthplan Services., Inc*., 348 F.3d 417, 438 (4th Cir. 2003), the Fourth Circuit specifically rejected decisions by other circuit courts to ignore affirmative defenses when considering class certification. "[R]egardless of other courts' interpretations of Rule 23, we have flatly held that 'when the defendants' affirmative defenses . . . may depend on facts peculiar to each plaintiff's case, class certification is erroneous.' " *Id.* (citing *Broussard*, 155 F.3d at 342).

### ii. Whether the conduct is continuing or permanent is not dispositive

Plaintiff argues that any defense relating to statute of limitations or other equitable time-based limitations lacks merit because the trespass by Defendant is continuing, as opposed to permanent.

Section 15-3-530 of the South Carolina Code provides a three-year statute of limitations for

trespass.[9] However, the application of the statute varies depending upon whether the trespass is permanent or continuous.[10] If the trespass is of a character so permanent that the entire damage occurs in the first instance, the statute of limitations bars the action if it is not brought within the statutory period after discovery of the first actionable injury. *Hedgepath v. AT&T*, 348 S.C. 340, 357, 559 S.E.2d 327, 337 (Ct. App. 2001); 26 S.C. Jur. Limitation of Actions § 28. On the other hand, if the trespass is continuing – meaning it is intermittent or periodical – the expiration of the limitations period does not completely bar a claim and a landowner may at any time recover for an injury to his land which occurred within the statutory period. *Id.*

The parties vigorously dispute whether, based upon Plaintiff's allegations, Defendant's use of fiber optic cable for general telecommunications constitutes a permanent or continuous trespass. However, even if this Court were to assume that the alleged trespass was continuous,[11] it would not

---

[9] Prior to April 5, 1988, section 15-3-530 of the South Carolina Codeprovided a six-year statute of limitations for trespass.

[10] Although South Carolina authority references both continuous and permanent trespass, South Carolina courts primarily analyze the contours of permanent versus continuous behavior in terms of nuisance. *See Hedgepath v. AT&T*, 348 S.C. 340, 357–58, 559 S.E.2d 327, 337–38 (Ct. App. 2001); *Silvester v. Spring Valley Country Club*, 344 S.C. 280, 286–88, 543 S.E.2d 563, 566–68 (Ct. App. 2001). This Court's review of relevant South Carolina authority indicates that although the concepts of trespass and nuisance are not interchangeable, the same analysis is employed to determine whether an encroachment is permanent or continuous. *See Butler v. Lindsey*, 293 S.C. 466, 472–73, 361 S.E.2d 621, 624 (Ct. App. 1987); 26 S.C. Jur. Limitation of Actions § 28. In its own brief, Defendant defined "permanent" for trespass purposes using the portion of a South Carolina case that defines "permanent" for nuisance purposes. [Def.'s Resp., Doc. # 84, 29–30 (citing *Silvester*, 344 S.C. at 286, 543 S.E.2d at 566–67).]

[11] Classifying the trespass in this case is not an easy task. The limited South Carolina authority on point tends to focus on (1) whether abatement – or elimination of the challenged conduct – is reasonably and practically possible; and (2) whether the injury is divisible. *See, e.g., Hedgepath,* 348 S.C. at 359, 559 S.E.2d at 337–38 (discussing abatement and how permanent trespasses create indivisible injury); 26 S.C. Jur. Limitation of Actions § 28 (noting that a continuous trespass creates a fresh injury each day). A permanent trespass is not capable of abatement and the injury is indivisible, whereas a continuous trespass may be abated and the

change this Court's ruling that individual issues predominate over common issues in this case.

First, although Plaintiff claims the continuing nature of Defendant's conduct in this case would bar its proposed defense of laches,[12] she provides no authority for this proposition. [Pl.'s Reply, Doc. # 88, at 6.] Under South Carolina law, "[l]aches is defined as 'neglect for an unreasonable and unexplained length of time, under circumstances affording opportunity for diligence, to do what in law should have been done.' " *Robinson v. Estate of Harris*, 391 S.C. 114, 118, 705 S.E.2d 41, 43 (2011) (quoting *Hallums v. Hallums*, 296 S.C. 195, 198, 371 S.E.2d 525, 527 (1988)). "[W]hether laches applies in a particular situation is highly fact-specific, so each case must be judged on its own merits." *Muir v. C.R. Bard, Inc.*, 336 S.C. 266, 297, 519 S.E.2d 583, 599 (Ct. App. 1999). Given the fact-specific nature of laches, this Court cannot say that a defense of laches is inapplicable to the potential class as a whole. *See Mack v. Edens*, 306 S.C. 433, 436–37, 412 S.E.2d 431, 433–34 (Ct. App. 1991) (denying a defense of laches for a claim of continuing trespass, but only after considering the defense in light of the facts of the case).

Second, the nature of the trespass does nothing to impact Defendant's notice-based defenses of waiver, estoppel, and prescriptive easement. *See, e.g.*, *Janasik v. Fairway Oaks Villas Horizontal Prop. Regime*, 307 S.C. 339, 344, 415 S.E.2d 384, 387-88 (1992) (holding that waiver may occur

---

injury divided. On initial review, it would appear that the alleged conduct is more akin to a permanent trespass, as it would be impractical to require Defendant to cease using the fiber optic cable for general telecommunications and the injury suffered by Defendant exceeding the scope of the easements at issue does not seem easily divisible.

[12] Plaintiff also alleges that there is no available statute of limitations defense against the potential class members' unjust enrichment claims because "the unjust enrichment that Plaintiff alleges [is] of a continuing nature . . . ." [Pl.'s Reply, Doc. # 88, at 6.] Again, Plaintiff cites no authority for the proposition that the statute of limitations period for an unjust enrichment is dependent upon whether the opposing party's conduct is continuous or permanent. Further, Defendant would still have a potential defense of laches against the unjust enrichment claims.

when the adverse party "possessed, at the time, actual or constructive knowledge of his rights or of all the material facts upon which they depended"); *Kelley v. Snyder*, 396 S.C. 564, 572, 722 S.E.2d 813, 817 (Ct. App. 2012) ("To establish a prescriptive easement, the party asserting the right must show: (1) continued and uninterrupted use of the right for twenty years; (2) the identity of the thing enjoyed; and (3) use which is either adverse or under a claim of right."); *State v. Hinojos*, 393 S.C. 517, 523 713 S.E.2d 351, 354 (Ct. App. 2011) (holding that estoppel "applies if a person, by his actions, conduct, words or silence which amounts to a representation, or a concealment of material facts, causes another to alter his position to his prejudice or injury").

### iii. Defendant's alleged notice is not inadequate as a matter of law and would thus require individualized inquiry in at least several cases

Plaintiff claims that the notice alleged by Defendant is deficient because potential class members never had notice or knowledge that the "fiber optic cable on their property was being used for the unauthorized [purpose] of transmitting general telecommunications as opposed to the authorized use of transmitting electricity." [Pl.'s Reply, Doc. # 88, at 6–7.] Plaintiff makes two primary arguments[13] attacking the Defendant's alleged notice that fiber optic cable was being used for general telecommunications. The Court will address each in turn.

First, Plaintiff contends that potential class members would not have received the communications and documents referenced by Defendant, and it is wholly speculative to argue they

---

[13]  Plaintiff also argued that potential class members would not have known whether or not they had fiber optic cable because, even if a person saw lines being installed in the late 1980s or early 1990s, fiber optic cable looks identical to standard wiring. [*Id.* at 7.] However, this is irrelevant and self-defeating. One, no party contests that Defendant had the right to install fiber optic cable under the terms of the easements at issue; they dispute the scope of Defendant's use of that cable. Two, the argument that no one knew what type of cable was installed in the late 1980s and early 1990s (or that the cable types looked identical) equally bolsters the proposition that no one could be certain the easement on their property did not contain fiber optic cable.

would have received Defendant's information.  [Id. at 7–8.]

The Court agrees that based upon the record, there is no indication that Defendant's various communications, filings, and press releases specifically targeted members of the proposed class – owners of property encumbered by transmission line easements containing fiber optic cable, through which Defendant allowed general telecommunications. However, it is probable that potential class members received Defendant's information.

Based on the affidavit of Mr. Gower, he and his staff gave approximately sixty-four speeches per year, to groups of at least fifty, over a period of at least ten years. [Gower Aff., Doc. # 84-2, at ¶ 7.] Moreover, these speeches were specifically delivered in South Carolina communities served by Defendant. [*Id.* at ¶ 6.] Thus, according to Mr. Gower's sworn affidavit, Defendant's communications were received by more than 32,000 individuals here in South Carolina.[14] It is reasonable to say that among these participants, there were at least some, if not several, property owners with transmission line easements containing fiber optic cable. In fact, to argue otherwise would strain credulity.

It is also worth noting that Plaintiff has identified virtually no other potential class members, although she bears the burden of proving predominance under Rule 23(b)(3) is met. *Gunnells*, 348 F.3d at 458. When considered in light of Plaintiff's burden, it is also beyond the realm of mere speculation to say that at least some of the potential class members could have seen Defendant's press releases, been shareholders of Defendant, or been employed[15] by Defendant.

---

[14]  At neither the hearing nor in its briefings did Plaintiff dispute the veracity of Mr. Gower's testimony that he and his staff delivered such speeches.

[15]  The Court notes that were the presence of former employees the only issue standing in the way of predominance, the Court could exclude current and former employees of Defendant from the class.

Accordingly, this Court cannot say that the potential class members would not, or could not, have received notice. *See, e.g.*, *Neidhardt v. TCI Midcontinent LLC*, No. 1:09–cv–078, 2011 WL 1527030, at *5 (D.N.D. Apr. 20, 2011) (noting that statement in affidavit of company official "indicate[d] that many landowners, and presumably potential class members, were notified of [company's fiber optic cable plans] through public notices, public meetings, or individual meetings").

Second, Plaintiff claims the content of the information proffered by Defendant did not provide notice that Defendant was using its fiber optic cable for general telecommunications. Plaintiff supports this contention by way of several arguments.

- References in the annual reports to the telecommunications business are contained in a limited number of pages, and the references themselves do not inform the proposed class member that their property in particular is being used for the transmission of general telecommunications. [Pl.'s Reply, Doc. # 88, 9–10.]

- While the regulatory filings do contain statements that telecommunications businesses would use Defendant's fiber optic cable, there is no indication that proposed class members knew of or read these detailed filings. Further, the filings would still not tell a particular individual that their property was being used for this purpose. [*Id*. at 10.]

- The press releases are unclear as to where they originated, and are vague as to the extent to which Defendant's fiber optic cable will be used for general telecommunications. [*Id*. at 12.]

- It is pure speculation for Defendant to claim that its employees would be class members, or that potential class members observed installation or maintenance activities. [*Id*. at 12.]

By asking this Court to find that the supposed notice alleged by Defendant was in fact no notice at all, Plaintiff is asking this Court to determine that the information disseminated by Defendant, even if received by a class member, did not constitute notice as a matter of law.

Under South Carolina law, notice can either be actual or constructive:

> Generally, actual notice is synonymous with knowledge. Constructive notice is a legal inference which substitutes for actual notice. It is notice imputed to a person whose knowledge of facts is sufficient to put him on inquiry; if these facts were pursued with due diligence, they would lead to other undisclosed facts. Therefore, this person is presumed to have actual knowledge of the undisclosed facts.

*Strother v. Lexington Cnty. Recreation Comm'n*, 332 S.C. 54, 64, 504 S.E.2d 117, 122 n.6 (1998) (internal citations and quotation marks omitted).

To be sure, the forms of the alleged notice proffered by Defendant range from the rather weak and hypothetical (potential class members approaching construction workers), to the rather sound and probable (meetings with South Carolina residents), with the remainder falling somewhere in between. Still, it is unnecessary for this Court to attempt to parse through the various forms of notice provided by Defendant because this Court cannot rule that *all* of the proposed forms of notice were inadequate as a matter of law.

For example, Defendant has produced sworn affidavits that its representative delivered in-person discussion speeches, likely to potential class members, where a company representative discussed Defendant's plans to use its fiber optic cable to provide telecommunications services. [Gower Aff., Doc. # 84-2, at ¶¶ 6–8; Moore Aff., Doc. # 84-1, at ¶¶ 12–13.] Further, Defendant has produced a shareholder's report, whose validity is uncontested, that the company was extending its fiber optic cable system to provide telecommunications services. [PEC Shareholder Reports, Doc. # 84-1, at 20.]

On the record before it, this Court cannot say that these communications failed to provide information sufficient to put a potential class member on inquiry that the fiber optic cable in their easements were being used for general telecommunications.[16] *See Strother*, 332 S.C. at 64, 504

---

[16] Plaintiff actually concedes that the regulatory filings, which are matters of public record, contained information that Defendant was using its fiber optic cable for general

21

S.E.2d at 122 n.6. "Although it is difficult to determine with any precision, it appears that here the . . . affirmative defenses are not without merit and would require individualized inquiry in *at least some* cases . . . ." *Gunnells*, 348 F.3d at 438 (emphasis added).

Accordingly, following a "close look" at Plaintiff's claims, and having conducted a "rigorous analysis" of those claims in light of Defendant's affirmative defenses, the Court finds that Plaintiff has not met her burden under Rule 23(b)(3) of demonstrating that common issues predominate over individual issues.[17] *Gariety*, 368 F.3d at 359 (4th Cir. 2004); *see also Gunnells*, 348 F.3d at 458 ("The placement of this burden upon the parties seeking class certification reflects the principle that a class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.' ")

### 2.  Variations among purpose clauses in the easements

The easements at issue require varying degrees of individual examination , which further supports this Court's finding that Plaintiff fails to demonstrate predominance.[18]

---

telecommunications purposes. [*See* Pl.'s Reply, Doc. # 88, at 6–7.]

[17]  Defendant argues that damages can only be determined on a case-by-case basis while Plaintiff argues damages can be determined on a uniform per foot or per mile basis. The Court takes no opinion as to the proper method for evaluating damages in this case. However, while an individual damages determination would be a factor to support this Court's finding that Plaintiff has not demonstrate predominance, individual damage determinations alone would not be a basis for denying class certification. "Rule 23 contains no suggestion that the necessity for individual damage determinations destroys commonality, typicality, or predominance, or otherwise forecloses class certification." *Gunnells*, 348 F.2d at 428; *see also Ward v. Dixie Nat. Life Ins. Co.*, 594 F.3d 164, 180 (4th Cir. 2010) ("[T]he necessity of making an individualized determination of damages for each class member generally does not defeat commonality.")

[18]  Other courts have dealt with the issue of grouping easements by their purpose language, and the Court could potentially create subclasses that might cure this deficiency. However, when considered in light of the individual issues that are already pervading the common issues, the variation among the purpose clauses further counsels against predominance and, accordingly, class certification.

Plaintiff has identified five easement forms that supposedly prohibit the conduct at issue here, sorted by the "purpose clause" – the key language within the easement grant. [*See* Easement Forms, Doc. # 88-3, at 2–19.] However, based on the language of these purpose clauses, some of the easement forms may arguably allow Defendant to use fiber optic cable for general telecommunications purposes.

Easement Forms 1 and 2 give Defendant the right " to do all things necessary or convenient" for the transmission of electricity, including "transmitting communications . . . for use in conducting the Company's business." [*Id*. at 2–7, 4.] It is unclear how expansive the phrases "all things necessary and convenient" and "conducting the Company's business" may be. Defendant was also involved in the telecommunications business from the early 1990s through the mid-2000s, allowing Defendant to argue that the conduct Plaintiff describes as "general telecommunications" was in fact a part of "the Company's business" and therefore permitted under these easements.

Easement Form 3 contemplates the construction, operation, and maintenance of "all telephone, telegraph, and other wires . . . and accessories desirable in connection therewith." [*Id*. at 13.] The easements in Easement Form 4 contain grant language either allowing for the transmission of electricity or electric transmission lines, including all telephone, telegraph, and other wires, and accessories desirable in connection therewith, or allowing the transmission of electricity and all things necessary or convenient thereto including transmitting communications for use in conducting Defendant's business. [*Id*. at 17.]

Given this variant language among the easement forms, determining the rights under one type of easement will not provide a *classwide* resolution to address the scope of all of the easements at issue. *See Dukes*, 131 S. Ct. at 2552; *Broussard*, 155 F.3d at 340 (denying class certification in

a suit based on a theory of collective breach of a franchising contract because "plaintiffs simply cannot advance a single collective breach of contract action on the basis of multiple different contracts").

### 3. Plaintiff's reliance on supposedly factually similar cases is misplaced

In arguing that this class action should move forward, Plaintiff discusses several cases that also involved the use of fiber optic cable for purposes exceeding the scope of a company's easement. *See Fisher v. VEPCO*, 217 F.R.D. 201 (E.D. Va. 2003); *Gressette v. SCE&G*, No. 2004-CP-10-2006, 2009 WL 6707442 (S.C. Ct. Com. Pl. 2009); *Seven Hills, Inc. v. Bentley*, 848 So. 2d 345 (Fla. 1st Dist. Ct. App. 2003); *Schexnayder v. Entergy La., Inc.*, 899 So. 2d 107 (La. 5th App. Cir. 2005). While these cases do offer similar facts, a brief examination of this authority counsels against class certification in the case at bar.[19]

#### i. Although seemingly analogous, *Fisher* is readily distinguishable

Understandably, Plaintiff relies most heavily on *Fisher*, where a district court within the Fourth Circuit granted class certification to landowners who brought suit against an electric utility and its affiliated telecommunications company, alleging that the companies' use of easements on their land for a commercial fiber optic network exceeded their scope and constituted a continuing trespass. 217 F.R.D. at 204–206. Although not binding authority on this Court, at first blush, the *Fisher* case[20] would appear to support class certification in the present case. However, a more

---

[19]    Plaintiff also uses these cases to illustrate the supposed manageability of this class action. As discussed throughout Section II, this reliance is equally misplaced.

[20]    At least two district court cases decided since *Fisher* have specifically taken issue with *Fisher*'s conclusion. *See, e.g.*, *Genenbacher v. CenturyTel Fiber Co. II*, 244 F.R.D. 485, 489 n.2 (C.D. Ill. 2007) ("The Court respectfully disagrees with the *Fisher* court's conclusion that common issues predominate over so many individualized factual matters."); *Corley v. Entergy Corp.*, 220 F.R.D. 478, 486 n.10 (E.D. Tex. 2004) (arguing that damages issues

searching analysis reveals several key distinctions relating to predominance.

First, the *Fisher* court certified the class primarily under Rule 23(b)(2), which discusses declaratory relief and has no predominance requirement. *Id.* at 226, 228; *see also* Fed. R. Civ. P. 23(b)(2); *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979) (holding that in Rule 23(b)(2) action "[i]t is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue"). The *Fisher* court only alternatively held that a class action would be maintainable under Rule 23(b)(3). 217 F.R.D. at 226–28. To the extent the court's discussion under Rule 23(b)(3) is considered more than dicta, the court spent little time analyzing the predominance factor in that case. *Id.* at 226–27.

Second, the reason the *Fisher* court spent so little time discussing predominance is that, according to the court, the parties addressed only the manageability aspect of Rule 23(b)(3). *Id.* at 213. In its limited discussion of predominance, the *Fisher* court noted that "there is *no evidence* that consent or the statute of limitations are an issue for more than a handful of the potential class members," and later noted that "there is some potential that individual issues may arise *solely* on the issue of damages . . . ." *Id.* at 217, 227 (emphasis added). As this Court has previously discussed, there is evidence here of numerous affirmative defenses necessitating individual inquiry.

Third, *Fisher* only addressed the limited affirmative defenses raised by the defendants under the commonality prong of Rule 23(a)(2), and held that "the law in this circuit is that differences in the availability of certain defenses do not defeat class certification where, as here, all the class claims are based on the same legal and remedial theory." *Id.* at 217. To the extent this is an accurate statement of current law in the Fourth Circuit, it can only be accurate for purposes of Rule 23(a)(2)

_____

should have prevented consideration of Rule 23(b)(3) certification).

commonality and not Rule 23(b)(3) predominance. In *Gunnells*, which was decided only a few months after *Fisher*, the Fourth Circuit discussed predominance under Rule 23(b)(3) and reaffirmed that in the Fourth Circuit, "when [a] defendant['s] affirmative defenses . . . depend on facts peculiar to each plaintiff's case, class certification is erroneous.' " *Gunnells*, 348 F.2d at 428 (quoting *Broussard*, 155 F.3d at 342). Additionally, in *Dukes*, the Supreme Court recently explained that, even for purposes of Rule 23(a)(2) commonality, it is not the raising of common questions that drives class certification, but the capacity of the "classwide proceeding to generate common answers." *Dukes*, 131 S.Ct. at 2251.

ii.    State court cases cited by Plaintiff are similarly unavailing

Although the state cases cited by Plaintiff all involved a company allegedly exceeding the scope of the use of fiber optic cable within property owners' easements, they are more easily distinguishable than *Fisher*.

*Gressette* was a class action brought in South Carolina state court. It does not appear from the record that the *Gressette* court discussed the potential problems regarding affirmative defenses and other individual issues in any great detail. This makes sense, as South Carolina's class certification rule has no predominance or superiority requirement. *See* S.C. R. Civ. P. 23. It is well-settled that South Carolina's Rule 23 "endorses a more expansive view of class action availability than its federal counterpart." *See Grazia v. S.C. State Plastering, LLC*, 390 S.C. 562, 576, 703 S.E.2d 197, 204 (2010) (citing *Littlefield v. S.C. Forestry Comm'n*, 337 S.C. 348, 354–55, 523 S.E.2d 781, 784 (1999)). It is of little consequence, then, that a similar class was certified in a South Carolina state proceeding.

Although the state class certification rules applied in *Schexnayder* and *Seven Hills*, from

Louisiana and Florida respectively, discuss some form of predominance, the cases are still distinguishable. *See Schexnayder*, 899 So. 2d at 107; *Seven Hills*, 848 So. 2d at 345. One, they were each state court cases that applied specific state rules as interpreted by state courts. *Schexnayder*, 899 So. 2d at 112–13; *Seven Hills*, 848 So. 2d at 348–50. Accordingly, key federal cases, such as *Gunnells* and *Dukes,* were simply not considered. Two, in *Schexnayder*, the court did not discuss the individual issues presented by affirmative defenses, and focused the discussion of individual issues on damages calculations. *Schexnayder,* 899 So. 2d at 117–18. Three, the *Seven Hills* court also failed to address individual issues presented by affirmative defenses. Further, the *Seven Hills* case involved a settlement class, meaning that commonality and predominance under Florida law were not contested issues before the Court.

B.     Plaintiff cannot satisfy the superiority requirement

Plaintiff's failure to meet the predominance requirement under Rule 23(b)(3) requires that this Court deny certification. *See Zimmerman v. Bell*, 800 F.2d 386, 390 (4th Cir. 1990) (explaining that the possibility of having to make individualized determinations about different class members imposes an excess managerial burden on the court). However, denial of class certification is also appropriate because there are additional tremendous and substantial difficulties likely to be incurred in managing this action. *See* Fed. R. Civ. P. 23(b)(3).

1.     Scant progress has been made toward identifying the relevant information

As an initial matter, little momentum has been made toward positively identifying the two most critical components to this case: the easements at issue and the relevant class members. Although they disagree on the organization of the present easements, both Plaintiff and Defendant appear to agree that there are more easements at issue than those listed by Plaintiff. [*See* Def.'s

Resp., Doc. # 84, at 20–21; Pl.'s Reply, Doc. #88, at 3; Byrd Dep., Doc. #84-4, at 38:12–25.]

Moreover, other than Plaintiff, virtually no other class members have been identified, and the parties cannot agree as to how class members may be best identified. It is undisputed that because the easements may encompass several properties, "there are many more class members than the . . . easements applicable to this case." [Mot. For Cert., Doc. #69-1, at 6.] In examining how to appropriately identify class members, the manageability problems of this case become crystalized.

### 2. Title searches would be required

The parties offer two primary ways to identify class members: title searches and tax records.

According to Defendant, the process for identifying class members must begin with determining the exact location of the fiber optic cable at issue. [Moore Aff., Doc. # 84-1, at ¶ 21.] Once it is determined which parcels are actually impacted by fiber optic cable, the owners must be identified by individual title searches on each parcel of property. [*Id*. at ¶ 21.] These title searches would, of course, require a detailed examination of thousands of properties across multiple counties. [*See* Mot. for Certification, Doc. #69-1, at 6 (explaining that the 734 easements currently produced have since been subdivided into multiple properties).]

On the other hand, Plaintiff maintains that most class members' names could be obtained from county tax records. [Pl.'s Reply, Doc. #88, at 5.] Specifically, a map of Defendant's fiber optic system could be overlaid across a county tax map, and the owners of the property encumbered by that fiber optic system could than be obtained from the county tax records. [*Id*.]

After carefully reviewing both proposals, this Court believes that a title search would be required to identify the class members.

i. <u>Title search will accurately identify members of the class and give those class members proper notice</u>

First, a title search is the only reliable way to determine the relevant class members. Tax records are both "inaccurate and incomplete," as they do not accurately reflect the ownership of heirs and devisees, they do not reflect parties claiming an interest by adverse possession, they do not reflect areas of disputed ownership due to deep overlaps, and they could incorrectly show receivers of false conveyances as true owners. [Moore Aff., Doc. # 84-1, at ¶ 26; Byrd Dep., Doc. #84-4, at 51:10–22.]

Plaintiff's own expert,[21] in her deposition, agreed that "the tax office is not going to show you all the current owners," and that one would have to "pull the actual deeds to see who the current owners are." [*See* Byrd Dep., Doc. #84-4, at 52:4–7.] Plaintiff's expert, who sometimes works for attorneys in real estate matters, admitted she would not even rely on tax records to identify a property owner for an attorney. [*Id*. at 52:13–15.] It is also telling that tax records are so unreliable in determining the owner of a property that Defendant itself does full title searches each time it acquires a new transmission line easement. [Moore Aff., Doc. # 84-1, at ¶ 26.]

Second, a title search would be the only way to comport with the notice requirements for a Rule 23(b)(3) class. When a party seeks certification under Rule 23(b)(3), "the court must direct to class members the *best notice* that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2) (emphasis added). Such notice is required for a 23(b)(3) class so that class members have the opportunity to opt out and pursue their claims separately. *See* Fed. R. Civ. P. 23(c)(3)(B).

---

[21]    Plaintiff's expert, Jennifer Byrd, graduated from Florence-Darlington Technical College in 1994 with an Associates Degree as a Paralegal and works as an independent title abstractor. [*See* Byrd Report, Doc. # 50-1, at ¶ 1.]

ii.     A lesser form of notice is impermissible

Plaintiff suggests that a process less cumbersome than individual notice[22] based upon the results of title searches would be permissible in this case. [Pl.'s Reply, Doc. # 88 at 26– 27.] This argument fails for several reasons.

One, the Supreme Court has long held that, in a class action brought under Rule 23(b)(3), individual notice to identifiable class members is not a "discretionary consideration" to be waived in a particular case, nor may notice requirements be tailored to fit "pocketbooks of particular plaintiffs." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175–76 (1974). This requirement cannot be disregarded even though the cost might be prohibitively high, and even though no prospective class member has a large enough stake in the matter to justify separate litigation of individual claim. *Id*. Here, because the class members are identifiable, only individual notice will suffice under Rule 23.

Two, the state court cases cited by Plaintiff for the proposition that identification via tax records is acceptable for notice purposes did not apply the federal rules and instead applied more liberal state notice rules. *See Gressette*, 2009 WL 6707442; *Schexnayder*, 899 So. 2d at 107; *Seven*

---

[22]    Depending on the procedural posture of a class action, Federal Rule of Civil Procedure 23 allows for at least three different forms of notice to potential class members, which vary in their rigorousness. Class actions certified under Rule 23(b)(1) or 23(b)(2) require what is likely the least demanding notice to class members. *See* Fed. R. Civ. P. 23(c)(2)(A). For these classes, a court need only "direct appropriate notice to the class." *Id*. Settlement classes require a slightly more onerous notice procedure, as "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." *See* Fed. R. Civ. P. 23(e)(1). The most rigorous notice requirement is reserved for classes, like the one at bar, which are certified under Rule 23(b)(3). For these classes, a "court must direct to class members the *best notice* that is practicable under the circumstances, *including individual notice* to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language [the seven requirements laid out in the Rule.]" *See* Fed. R. Civ. P. 23(c)(2)(B) (emphasis added).

*Hills, Inc.*, 848 So. 2d at 345. Further, at least one of these cases dealt with the far more liberal class settlement notice. *Seven Hills, Inc.*, 848 So. 2d at 347.

Three, relying again on *Fisher*, Plaintiff indicates that even if the tax records could not identify each class member for purposes of individual notice, the Court could use its discretion to provide an alternative form of notice. *See Fisher*, 217 F.R.D. at 227. However, in addition to the predominance issues discussed previously, *Fisher* is also distinguishable because the class was ultimately certified under Rule 23(b)(2), and the *Fisher* court was only required to "direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A).[23]

Four, Petitioner's suggestion that this Court should also follow *Fisher* by moving forward with the case now and waiting until some later date to determine whether actual owners are identified by tax records is untenable. *Fisher* was decided prior to December 1, 2003, before Federal

---

[23] Although the class was certified under Rule 23(b)(2), the *Fisher* court initially ordered the parties to provide notice to class members under 23(c)(2)(b), which is the notice provision governing classes certified under 23(b)(3). *See Fisher*, 217 F.R.D. at 228. The *Fisher* court ordered this heightened notice, which it claimed could be accomplished by using tax records, due to the potential for conflicts among the class members on the proper measure for damages. *Id*. at 227–28. Although this might appear to support the notion that Plaintiff in this case could use tax records to comport with the notice requirements of Rule 23(b)(3), there are several critical distinctions that indicate the contrary in the instant case. First, although the *Fisher* court chose to order notice under 23(c)(2)(b), such a heightened notice was not required as the class was certified under Rule 23(b)(2). Second, as discussed herein, the court in *Fisher* chose to handle potential notice problems as they arose, a conditional approach that is likely no longer permissible under Rule 23. *See* Fed. R. Civ. P. 23 advisory committee's note (2003). Third, the record in *Fisher* appears to indicate that notice pursuant to 23(c)(2)(b) was likely never effectuated. According to the docket in *Fisher,* the parties disputed how such notice could be delivered, and a *plan* to effectuate notice was not approved until seven months after the order granting class certification. *See Fisher*, Civil Docket No. # 3:02-cv-00431-REP, at Doc. # 148. However, less than two months later, a motion for approval of class settlement was filed and the court issued a new order approving "the form, contents, and *method of dissemination of the settlement notice* . . . ." *Id.* at Doc. # 174. At that point, both parties were in agreement about the notice required to effectuate settlement, and the court was only required to "direct notice in a reasonable manner to all class members who would be bound by the proposal." *See* Fed. R. Civ. P. 23(e)(1).

Rule of Civil Procedure 23(c)(1) was amended to remove the language authorizing conditional certification. *See* Fed. R. Civ. P. 23 advisory committee's note (2003). As noted in the committee note, the former provision that class certification "may be conditional" was deleted because "[a] court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met." *Id*. Although it did not style its certification as conditional, the *Fisher* court specifically certified the class "*on the condition* that" easement scope questions and notice issues "do[] not require extensive individual adjudication." *Fisher*, 217 F.R.D. at 228 (emphasis added).

Although the Fourth Circuit has not squarely addressed how the elimination of conditional certification from Rule 23 impacts class actions, the Third Circuit has examined this precise issue.

> A trial court must make a definitive determination that the requirements of Rule 23 have been met before certifying a class. While courts retain discretion under Rule [23] . . . to alter[ ] or amend [ ] before final judgment an order granting or denying class certification, courts should not grant certification except after searching inquiry, and . . . should not rely on later developments to determine whether certification is appropriate.

*Hohider v. United Parcel Service, Inc*., 574 F.3d 169 (3rd Cir. 2009) (internal citations and quotation marks omitted); *see also In re Hydrogen Peroxide Antitrust Litig*., 552 F.3d 305, 319–20 (3d Cir.2008); 5 James Wm. Moore et al., Moore's Federal Practice § 23.80[2] (3d ed. 2008).

It seems that the *Fisher* court adopted a conditional posture which would be impermissible under current Rule 23. *Fisher*, 217 F.R.D. at 227 (holding that "[a]lthough there is some evidence that these problems [regarding owner identification via tax records] may arise, the Court does not perceive that they will occur with such frequency to constitute a serious impediment to certification"). This Court will not employ a wait-and-see approach and is denying certification because it cannot make a "definitive determination" that this class action would be manageable. As

noted below, there is ample evidence to the contrary.

### 3. Managing this class action would be problematic

The difficulties in proceeding with this class action abound.[24]

First, the work required to simply identify the relevant class members via title searches is a substantial task. Assuming all relevant parcels of property impacted by Defendant's fiber optic cable are identified,[25] someone must still perform a title search on every parcel of property. These untold thousands of title searches would occur in various counties across the State of South Carolina. This is a burdensome, time-consuming, and expensive endeavor that the Court will be called upon to monitor, regulate, and referee.

Second, there is likely additional work required to identify the universe of relevant

---

[24] Plaintiff's contention that the conduct at issue creates a continuous trespass further complicates this case by way of damages calculations. With regard to those potential class members who may have been aware that Defendant was using fiber optic cable for general telecommunications purposes (and subject to notice-based affirmative defenses), Defendant could argue that damages for those class members are limited based on their knowledge of Defendant's "unauthorized" use. Although South Carolina law does not impose a statute of limitations for *bringing* a continuous trespass claim, it does *limit recovery* to those damages that occurred within the statutory period. *See Hedgepath,* 348 S.C. at 357, 559 S.E.2d at 337. This means that Defendant could argue that class members who at some point became aware of Defendant's "unauthorized" use would only be allowed to recover damages for conduct occurring three to six years after that particular class member became aware of Defendant's use. *See* S.C. Code. Ann. § 15-3-530 (providing a three-year statute of limitations for trespass on or after April 5, 1988, and a six-year statute of limitations for trespass prior to that date).

[25] Identifying the relevant fiber optic cable may be equally as problematic. According to Defendant, "there is no single source available to determine the exact location of [Defendant's] fiber optic cables." [Moore Aff., Doc. # 84-1, at ¶ 23.] To further complicate matters, in addition to installing its own fiber optic cable, Defendant has entered into Joint Use Agreements ("JUAs") with numerous third parties that allow those third parties to install their own fiber optic cable on Defendant's facilities throughout South Carolina. [*Id.* at ¶ 10.] Defendant claims it is not aware of the location of fiber optic cable owned by third parties and placed in Defendant's rights of way pursuant to the JUAs. [*Id.*]

easements. According to Defendant, the collection of easements provided by Plaintiff is not complete, and the only way to locate all relevant easements would be to perform title searches[26] for impacted property. [Moore Aff., Doc. # 84-1, at ¶28.] Plaintiff's expert appears to agree that a title search is necessary to find additional easements, and to determine which easement encumbers which parcel of land. [Byrd Dep., Doc. #84-4, at 38:12–25.]

Third, the Court must also deal with the interplay between transmission line easements and the potentially more inclusive distribution line easements.[27] Distribution line easements often overlap transmission line easements on the same property. [Moore Aff., Doc. # 84-1, at ¶ 32.] According to Defendant, distribution line easements are typically "blanket easements" that encumber the entire property, rather than specifying a particular easement area. [Moore Aff. ¶¶ 8-9, 32.] Although they dispute the gravity of its impact, Plaintiff does not dispute the existence of distribution line easements or the notion that distribution line easements could allow for the transmission of general telecommunications through fiber optic cable. [Pl.'s Reply, Doc. #88, at 8, 20–21.] Accordingly, after the parties engage in the potentially protracted tasks of locating the distribution line easements and determining which distribution line easements overlap applicable transmission line easements,[28] the Court would have the arduous task of evaluating both easements to ascertain the scope of Defendant's rights.

---

[26] This is a significant task. During a hearing on Plaintiff's Motion for Sanctions, Doc. # 78, Plaintiff's counsel informed the Court that it had spent untold man hours and nearly $70,000 to uncover only a small subset of the easements ultimately provided to the Court.

[27] The distribution line easements further separate the case at bar from *Fisher* and the state cases upon which Plaintiff relies. Those cases do not appear to have dealt with the interplay between transmission line easements and the far more inclusive distribution line easements.

[28] Defendant claims that a title search is required to find potentially relevant distribution line easements. [Moore Aff., Doc. # 84-1, at ¶ 34.]

Plaintiff contends that distribution line easements make up a small portion of Defendant's fiber optics system and that this small portion can be excluded from the class if Defendant "produces evidence demonstrating" a distribution line for which easements allowing general telecommunications have been issued. [Pl.'s Reply, Doc. #88, at 20–21.] However, it is Plaintiff who bears the burden of demonstrating that "a class action is superior to other available methods for . . . adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Further, to accept Plaintiff's contention that we certify the class and then determine the impact of distribution line easements as we move along would require the Court to certify this class before making a "definitive" determination that the requirements of Rule 23 have been met. *Hohider, Inc.*, 574 F.3d at 169; Fed. R. Civ. P. 23 advisory committee's note (2003).

## Conclusion

To certify this class action would be to open a Pandora's box from which would emerge scores of individual issues, unmanageable identification problems, and untold temporal and financial costs. In addition to an improper class definition, Plaintiff has not met her burden under Rule 23(b)(3), as individual issues predominate over common questions of law or fact, and a class action is not the superior method for adjudication of the controversy. *See* Fed. R. Civ. P. 23(b)(3).

Based on the foregoing, it is **ORDERED** that Plaintiff's Motion for Class Certification, Doc. # 69, is **DENIED**.

**IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

Florence, South Carolina
June 25, 2012

35