IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Gladys S. Melton, by Ernie Dutton her power of attorney, on behalf of other persons similarly situated, )))) | Civil Action No.: 4:11-cv-00270-RBH |
| Plaintiff, )) | |
| ) | **ORDER** |
| v. )) | |
| Carolina Power & Light Co., )) | |
| Defendant. )) | |

This matter is before the Court pursuant to the Motion for Sanctions [Doc. # 78], filed by Plaintiff Gladys S. Melton, by Ernie Dutton her power of attorney, on behalf of other persons similarly situated ("Plaintiff") on October 31, 2011. Defendant Carolina Power & Light Company d/b/a Progress Energy Carolinas, Inc. ("PEC" or "Defendant") filed a response on November 17, 2011, to which Plaintiff replied. On May 18, 2012, this Court held a hearing on the Motion where it heard from all parties.[1] On June 25, 2012, this Court required the parties to brief the issue of whether, in lieu of sanctions, cost shifting might be appropriate. Each party filed a supplemental brief on July 9, 2012. For the reasons discussed below, Plaintiff's Motion is denied.

**Relevant Background**

Plaintiff initially filed this suit against Defendant seeking class action status and alleging that Defendant exceeded the scope of easements it holds over Plaintiff's property and over the

---

[1] The Court also heard arguments relating to Defendant's Motion to Partial Summary Judgment [Doc. # 56], and Plaintiff's Motion to Certify Class [Doc. # 69]. On June 25, 2012, in separate orders, this Court denied both motions. [*See* Docs. # 94, 95.]

property of similarly situated individuals.[2]

According to Plaintiff's counsel, on March 18, 2011, as he began the process of discovery, he requested "[a]ll easements or court orders providing PEC its right-of-way interest or authority with respect to all the properties in South Carolina over or under which or through which it has placed fiber optic cable or allowed fiber optic cable to be placed." [*See* Pl.'s First Request for Prod., Doc. # 78-5, at ¶ 4.]

Defendant responded to Plaintiff's request as follows:

> PEC objects to this request on the basis that it is vague, ambiguous, and overbroad. PEC further objects to this request on the basis that the documents sought are public records, to which Plaintiff already has access and that producing the documents would cause undue burden and unnecessary expense to PEC. PEC further objects to this request to the extent that it calls for documents not in the possession, custody, or control of PEC. Subject to and without waiving its objections, *PEC will produce samples* of all types of easements of which it is aware that provide PEC its right-of-way interest or authority with respect to all the properties in South Carolina over or under which or through which it has placed fiber optic cable or allowed fiber optic cable to be placed. To the extent that PEC discovers additional types or forms of easement that differ from those produced, it will supplement this response.

[Def.'s Resp. to Pl.'s First Request, Doc. # 78-6, at 3–6 (emphasis added).] According to Plaintiff, rather than supply the actual fiber optic easements in its possession, Defendant "provided samples of the variety of easements it has used for its entire right-of-way system in South Carolina [Pl.'s

---

[2] Defendant has easements in South Carolina for two different types of power lines. Transmission lines are high-voltage lines that run from power-generating facilities to substations and from substation to substation. Distribution lines are lower-voltage lines that run from substations to individual customers. [*See* Mot. for Certification, Doc. # 69-1, at 2–3.] Distribution line easements are typically "blanket easements" that encumber the entire property, rather than specifying a particular easement area. [Moore Aff., Doc. # 84-1, at ¶¶ 8-9, 32.] It is possible for a particular property to be encumbered by both a distribution line easement and a transmission line easement, and that the distribution line easement could allow certain uses prohibited by the transmission line easement. [*See* Pl.'s Reply to Class Cert., Doc. #88, at 8, 20–21.]

2

Mot. For Sanctions, Doc. # 78-1, at 1.]

On June 2, 2012, counsel for Plaintiff emailed Defendant and expressed this concern over Defendant's production, specifically noting that "[t]he production request seeks all such easements or court orders. Please clarify whether all of such documents in Defendant's possession have been provided." [Prod. Email, Doc. # 83-1, at 2–3.] On June 6, 2012, in response to this e-mail, counsel for Defendant replied, in relevant part, as follows:

> PEC has produced, to the best of its knowledge, an example of every different easement form in use in South Carolina where fiber is installed or allowed to be installed. Obviously, *the total number of easements at issue is much greater than the number produced*. PEC does not have information sufficient to identify which of the example easements are in fact easements in which fiber has been placed. PEC believes that its response to the RFP is the most economical and efficient means of producing the documents necessary for determination of class certification issues, which requires the parties and the Court to evaluate the scope language of the various easement forms.

[*Id*. at 2 (emphasis added).]

Plaintiff's counsel claims he carefully reviewed all the sample easements supplied by Defendant, and determined that the sample easements supplied by Defendant were very unfavorable to its class certification motion because there was "substantial variety in the easements and many looked like distribution line easements typically not used in long-distance transmission line right-of-way systems. Thus, it became necessary for Plaintiff to try to obtain a much better representative group of the actual fiber optic easements." [Pl.'s Suppl. Br., Doc. # 99, at 5.]

In an effort to obtain this more representative group, from June through September, Plaintiff's counsel traveled throughout South Carolina and collected, analyzed, and sorted various easements. [*See* Pl.'s Itemization, Doc. # 99-1, at 6–10.] In collecting these more representative easements, Plaintiff's counsel claims he incurred $2,546.22 in costs, and $63,420 in attorney's fees,

3

which consisted entirely of his own time.

On September 15, 2011, during a deposition of Defendant's corporate representative, which was noticed by Plaintiff and covered, in part, the scope of Defendant's document production, Plaintiff claims he discovered that Defendant had easements in its possession which were more representative of the easements at issue in the case than those previously produced. [*See* Pl.'s Mot. For Sanctions, Doc. # 78-1, at 2; Def.'s Resp., Doc. # 82, at 5.] Based upon this information, on September 16, 2012, Plaintiff's counsel sent a more limited discovery request seeking only transmission line easements.[*See* Pl.'s Second Request for Prod., Doc. # 82-3.] By September 24, 2011, Plaintiff had received the requested production and found it satisfactory. [Pl.'s Mot. For Sanctions, Doc. # 78-1, at 2.]

On October 31, 2011, more than a full month after finally receiving what he deemed sufficient discovery, Plaintiff's counsel, pursuant to Rule 37, filed the Motion for Sanctions at issue. Plaintiff now seeks the costs and attorneys' fees incurred in procuring the various easements, arguing that these costs and fees were incurred as a direct result Defendant's withholding of relevant easements. [*Id.*] Defendant contends Plaintiff's Motion for Sanctions should be denied, and that it should be awarded the attorney's fees and costs it has incurred in responding to the Motion. [Def.'s Resp., Doc. # 82, at 1.] Specifically, Defendant argues that it made clear in its discovery responses and follow-up communications that it was producing only a *sample of easements*, that this response was reasonable, and that Plaintiff never filed a motion to compel. [Def.'s Response, Doc. # 83, at 6–12.]

4

**Discussion**

Pursuant to either Federal Rule of Civil Procedure 37 or 26, Plaintiff's Motion for Sanctions should be denied.

**I.      Rule 37 sanctions**

Plaintiff is not entitled to sanctions under Federal Rule of Procedure 37, nor is Defendant entitled to attorney's fees and expenses it has incurred in responding to the Motion at issue.

Federal Rule of Civil Procedure 37 permits a court to require a party who provides evasive or incomplete disclosure to pay to costs and attorneys fees of the requesting party. Fed. R. Civ. P. 37(c), (d). A court should not order sanctions under the Rule if the opposing party's failure was substantially justified or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(d)(3). This is in keeping with "[t]he purpose of Rule 37[, which] is to allow the district courts to *punish deliberate noncompliance* with the federal rules of discovery and to deter such conduct in the future." *Zornes v. Specialty Indus., Inc.*, No. 97-2337, 1998 WL 886997, at *9 (4th Cir. Dec. 21, 1998) (emphasis added). The requirement of deliberate noncompliance is especially critical when a moving party seeks attorney's fees under Rule 37, as "[t]he narrow exceptions to the American Rule [that each party bears its own attorney's fees] effectively limit a court's inherent power to impose attorney's fees as a sanction to cases in which a litigant has engaged in bad-faith conduct or willful disobedience of a court's orders . . . ." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991).

Further, if a motion under Rule 37 is denied, a court may award costs and attorneys fees to the nonmoving party. Fed. R. Civ. P. 37(a)(5)(B). However, the court "must not" order payment if the motion was substantially justified or other circumstances make an award unjust. *Id*. Local Rule

7.09 also allows the court to award sanctions against a party who files a frivolous motion.

Having thoroughly reviewed the record and carefully considered the arguments of counsel at both the hearing and in their respective filings, the Court finds that sanctions pursuant to Rule 37 are not appropriate in this case.

First, by Plaintiff's own contention, Plaintiff's counsel should not prevail if the "response to Plaintiff's production request for the easements reasonably revealed that PEC had the actual easements, but was choosing to provide samples instead. If PEC's answer did reveal this as PEC claims, then PEC is right that Plaintiff"s remedy was to file a motion to compel, not seek sanctions." [Pl.'s Mot. For Sanctions, Doc. # 78-1, at 3.] Here, Defendants explained in their discovery response that they were providing samples, and further clarified in their June 6, 2011, email that it had provided something less than the actual easements. Considering Defendant's responses, especially in light of the fact that neither Plaintiff's March 18, 2011, discovery request nor his June 2, 2011, email sough to limit the requested production to only transmission line easements, the Court finds that Defendant "reasonably revealed" they were providing only samples of the multitude of easements requested by Plaintiff. Defendant was at least justified in its response and did not engage in deliberate noncompliance.[3] Further, the circumstances of Defendant twice indicating that only samples – subject to Defendant's objections and a statement that Defendant believed a sample was the most efficience and least burdensome means of production – were being provided would make an award unjust.

Second, an award of sanctions is also unjust because Plaintiff's counsel has admitted that

---

[3] Once Plaintiff filed a more limited discovery request seeking only transmission line easements, Defendant produced documents to the satisfaction of Plaintiff.

sometime in mid-June he began the process of uncovering easements only after determining that the produced easements were problematic. [*See* Pl.'s Suppl. Br., Doc. # 99, at 5; Pl.'s Itemization, Doc. # 99-1, at 6.] Therefore, before he devoted a substantial amount of time to uncovering the proper easements,[4] Plaintiff was aware that the easements produced were, at a minimum, not the easements he had hoped to procure. Nothing in the record indicates that Plaintiff, after this discovery, again contacted opposing counsel to discuss the problematic easements. The record also shows Plaintiff never filed a motion to compel at any point during this process. Under Local Civil Rule 37.01, a motion to compel "must be filed within twenty-one (21) days after receipt of the discovery response to which the motion to compel is directed . . . ." Further, to the extent Plaintiff's failure to produce the easements at issue was problematic, Plaintiff admits it learned the extent of any failure by at least the deposition conducted on September 15, 2011. Yet nothing in the record explains why Plaintiff waited nearly forty-five days before filing the Motion for Sanctions at issue. Plaintiff's Motion for Sanctions must be denied.

While the circumstances of the case make it inappropriate to grant Plaintiff's Motion for Sanctions, the Court holds that Defendant should not be awarded the attorney's fees and costs it has incurred in responding to the Motion. Both the Federal Rules of Civil Procedure and the Local Rules provide the Court with *discretion* to enter such an award. The Court finds that while Plaintiff's Motion for Sanctions should be denied as Defendant did not act without reason or in disregard of

---

[4] The Court also notes that in his itemization of expenses, Plaintiff's counsel lists time expended performing tasks that were either unrelated to uncovering easements or were actions he would had to have done regardless of Defendant's discovery responses, such as reviewing the produced easements, preparing his expert witnesses, or traveling to depositions. [Pl.'s Itemization, Doc. # 99-1, at 1–6.]

the Rules, Plaintiff's counsel also filed his Motion based upon his good-faith belief that the Rules supported his contention that Defendant should bear the cost of his attempted procurement of the relevant easements. In the end, this appears to be an example of competent attorneys who had a lapse in communication.

## **II.     Rule 26 sanctions**

Pursuant to this Court's June 25, 2012, order, the parties briefed the applicability of cost shifting pursuant to Federal Rule of Civil Procedure 26.

Providing an exception to the traditional discovery presumption that each party to a lawsuit bears its own discovery costs, Rule 26 permits the district court to shift costs onto the party requesting discovery upon a finding of "good cause." *See* Fed. R. Civ. P. 26(c)(1); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978). However, the cost shifting contemplated by Rule 26(c) provides for shifting of discovery costs, not the shifting of attorney's fees. *See, e.g., Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 577 (N.D. Ill. 2004) (awarding shifting of certain out-of-pocket discovery costs but providing that "[e]ach party will bear their own costs of reviewing the data.")*; Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 290 (S.D.N.Y. 2003) ("As a general rule, where cost-shifting is appropriate, only the costs of restoration and searching should be shifted."). Plaintiff acknowledged in his briefing that the amount he was seeking was comprised almost entirely of attorney's fees and Plaintiff did not argue that cost shifting was appropriate. [Pl.'s Suppl. Br., Doc. # 99, at 5–6.] Accordingly, the Court finds that cost shifting is not appropriate in this case.

In the supplemental briefing, Plaintiff did argue that sanctions, and not cost shifting, were appropriate under Rule 26 because Defendant improperly certified its discovery responses. [*Id*. at 3.] Rule 26(g) of the Federal Rules of Procedure defines the duty of counsel in responding to

8

discovery requests. That is, counsel must make "a reasonable effort to assure that the client has provided all the information and documents responsive to the discovery demand." Advisory Committee Notes to 1983 Amendments to Rule 26(g). "What is reasonable is a matter for the Court to decide on the totality of the circumstances." *Id*. "[U]nder Rule 26(g)(2) . . . . [the subject of the inquiry] is the thoroughness, accuracy and honesty (as far as counsel can reasonably tell) of the responses and the process through which they have been assembled." *Elliott v. Textron, Inc*., 192 F.R.D. 494, 503 (D. Md. 2000) (internal citations omitted).

For the reasons discussed throughout this Order, the Court cannot say that Defense counsel was inaccurate, dishonest, or unreasonable when it claimed to be producing "samples of all types of easements." [Def .'s Resp. to Pl.'s First Request, Doc. # 78-6, at 3–6.] Sanctions additionally seem unwarranted here as the available authority on point indicates that Rule 26(g)(3) sanctions are reserved for rather grievous violations. *See Bakker v. Grutman*, 942 F.2d 236, 237 (4th Cir. 1991) (noting that similar Rule 11 sanctions are "intended to punish and deter in cases of egregiously unacceptable misconduct.")*; see also Cox Operating, L.L.C. v. Cibilic*, 2010 WL 3614306, at *2 (E.D. La. Sept. 8, 2010) ("Fed. R. Civ. P. 26(g) authorizes the imposition of sanctions against a party who engages in egregious discovery misconduct."); *Lumbermens Mut. Cas. v. United States*, 70 Fed. Cl. 94, 99 (Fed. Cl. 2006) ("Our record does not reveal government conduct so egregious as to warrant monetary sanctions [pursuant to Rule 26(g) or Rule 37].").

## **Conclusion**

Based on the foregoing, it is **ORDERED** that Plaintiff's Motion for Sanctions [Doc. # 78] is **DENIED**.

**IT IS SO ORDERED.**

s/R. Bryan Harwell  
R. Bryan Harwell  
United States District Judge

Florence, South Carolina  
September 19, 2012